Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
MacPherson, Kelly & Thompson, LLC
P.O. Box 999
616 W. Buffalo
Rawlins, WY 82301
(307) 324-2713-phone
(307) 324-7348-fax

Attorneys for Defendant
Town of Evansville
tthompson@wyomingattorneys.net
krangitsch@wyomingattorneys.net
nmartinez@wyomingattorneys.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROY MESTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-CV00017-NDF |
| | ) | |
| TOWN OF EVANSVILLE, a duly incorporated | ) | |
| Municipal Corporation under the laws of the | ) | |
| State of Wyoming | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Town of Evansville, by and through its attorneys, Thomas A. Thompson, Kylie

M. Rangitsch,  and Natasha K. Martinez, of MacPherson, Kelly and Thompson, LLC, respectfully

submits this brief in support of its Motion for Summary Judgment.

### 1. Introduction and Short Statement of Evidence.

The Defendant, Town of Evansville [Town], is a municipal corporation located in Natrona

County, Wyoming.  The Plaintiff, Roy Mestas, was an employee of the Town from September 24,

1

2012, to April 17, 2013. [Plaintiff's Amended Complaint; admitted as true by Defendant]

The Defendant's Motion for Summary Judgment is directed to all three counts or causes of action set forth in Plaintiff's Amended Complaint, *i.e.* Discrimination Based on National Origin; Hostile Work Environment Based on Disability, in Violation of the ADA; Retaliation in Employment for Taking Protected Medical Leave for a Disability, in Violation of the ADA.

Pertinent parts of  the Plaintiff's deposition testimony and pertinent deposition exhibits [Exhibit 1], Plaintiff's responses to requests for admissions [Exhibit 2], and Plaintiff's answers to interrogatories [Exhibit 3] are submitted in support of  Defendant's Motion for Summary Judgment.

2.  **All Claimed Undisputed Material Facts.**

For the purposes of this motion, the following are undisputed material facts:

A.    Mr. Mestas suffered an injury on November 26, 2012. [Exhibit 2.  Request for Admission 1].  Mr. Mestas was treated for the injury  by Dr. Demian Yakel. [Exhibit 2.  Request for Admission 2]. On January 14, 2013, Dr. Yakel released Mr. Mestas to return to work to his regular duties with the Town of Evansville, with no restrictions. [Exhibit 2.  Request for Admission 3].  Mr. Mestas was off work due to his work injury from November 26, 2012, to January 14, 2013. [Exhibit 2.  Request for Admission 5]

B.    Between January 14, 2013, and April 17, 2013, Mr. Mestas did not present his employer with any doctor's statement or order which stated he had any restrictions  regarding the performance of his regular job duties with the Town of Evansville. [Exhibit 2. Request for Admission 4].

C.    When Mr. Mestas returned to work at the Town on January 14, 2013, he returned to the same position and duties as he held on November 26, 2012. [Exhibit 2.  Request for Admission 6].

2

D. The Town of Evansville expected Mr. Mestas to perform all the duties required of his position when he returned to work on January 14, 2013, through the date of his termination. [Exhibit 2. Request for Admission 7].

E. When Mr. Mestas returned to work on January 14, 2013, there were no changes in his job duties from those which existed on November 26, 2012 [Exhibit 2. Request for Admission 8]; there was no reduction in his pay from what he was being paid on November 26, 2012 [Exhibit 2. Request for Admission 9]; there was no reduction in his benefits provided by the Town of Evansville from what were being provided on November 26, 2012 [Exhibit 2. Request for Admission 10]; there was no reduction in the amount of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 11]; there was no reduction in the nature of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 12].

F. Mr. Mestas' employment was terminated on April 17, 2013. [Exhibit 1. Plaintiff's deposition p. 70, line 10; Depo.Exh. 5] On May 3, 2013, Mr. Mestas filed a claim with the EEOC claiming discrimination based on national origin and disability and stating that he was qualified for his job with the Town and was performing satisfactorily. [Exhibit 1. Plaintiff's deposition, Depo.Exh. 5] On May 16, 2013, Mr. Mestas filed a claim for Social Security Disability benefits, asserting he was disabled from working beginning on April 16, 2013. [Exhibit 1. Plaintiff's deposition, Depo.Exh.2; Exhibit 3. Interrogatory No. 15] He was awarded SSDI benefits on April 14, 2014, and found to be disabled as of April 16, 2013. [Exhibit 1. Plaintiff's deposition, Depo.Exh.8] He filed this action in 2017.

Additional claimed undisputed material facts are provided herein below as relevant to the

issues.

### 3. Standard for Summary Judgment.

The standard for summary judgment is well known.   "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact,  and the movant is entitled to judgment as a matter of law." *Davis v. Unified School District 500,* 750 F.3d 1168, 1170 (10th Cir. 2014)( quotations omitted); *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1220 (10th Cir. 2015).  An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and an issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Lounds, supra.*  The Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party.  *Lounds, supra.* Even so, the non-movant must still identify sufficient evidence requiring submission to the jury to survive summary judgment. *Id.*   Failure of proof of an essential element renders all other facts immaterial. *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1212 (10th Cir. 2000).

### 4.   The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of discrimination based on national origin as there are  no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law.

Mr. Mestas' first count against the Town of Evansville is that he was subjected to national origin based discrimination in violation of 42 U.S.C. 2000e-2. He asserts: 1) he was subjected to national origin based harassment and intimidation that affected a term, condition or privileged of employment and was so pervasive and egregious that it altered the working conditions of his employment and created a hostile working environment;  2) he was discharged after he complained to his supervisor,  Dale Brown, of the national origin based harassment and intimidation.

4

**Harassment.** Taking the following as undisputed facts for purposes of this summary judgment motion, Mr. Mestas' claim of discrimination based on national origin fails:  In response to requests for admissions, Mr. Mestas admitted that Dale Brown spoke the words "stupid beaner" or "dumb Mexican" on three occasions between February 22, 2013, and April 17, 2013.[Exhibit 2. Request for Admission 12]. Those dates were February 22, 2013, March 27, 2013, [Exhibit 1, Plaintiff's deposition,pp.126-129; Depo.Exh. 5] and on April 15, 2013, when Mr. Mestas asked to use his personally owned snow blower to shovel snow at Town Hall and Mr. Brown refused the request saying it would take him too long to get his snow blower, which was at Mr. Mestas' home a few blocks away, and told Mr. Mestas "that's what I have Mexicans for, to do this work" or words to that effect. [Exhibit 3.  Interrogatory No. 1]. On or about April 1, 2013, Mr. Mestas told Dale Brown that he did not like those comments ["stupid beaner" and/or "dumb Mexican"] and not to use those comments.  [Exhibit 2. Request for Admission 14 and Exhibit 3.  Interrogatory No. 12].

In response to Interrogatory No. 11: which asked how many different occasions Mr. Mestas personally heard Mr. Brown speak the words "Stupid Beaner" or "Dumb Mexican," who those words were directed to, and where it occurred, Mr. Mestas answered :

> I heard Dale Brown use the words "stupid beaner," "dumb Mexican," "beaner," and other derogatory words about "Mexicans" and other minority groups on multiple occasions, usually in the office at the Public Works maintenance garage and often in the presence of other Public Works Department employees.  These were general comments, references and jokes, not directed specifically at any one person, that included derogatory references about Hispanics.  Also before and during weekly morning meetings in the Public Works maintenance garage in the presence of other Public Works employees, Dale Brown and other employees would joke about Hispanics or other ethnic and racial minority groups.  I personally heard Dale Brown make derogatory comments about Hispanics on at least six occasions, if not more.

Mr. Mestas did not file a grievance with the Town concerning Dale Brown's comments

5

as described above [Exhibit 2. Request for Admission 16]; did not file a formal written complaint with the Town concerning Dale Brown's comments as described above [Exhibit 2. Request for Admission 17]; did not file an informal complaint with the Town concerning Dale Brown's comments as described above [Exhibit 2. Request for Admission 17]; did not personally speak to any of Dale Brown's supervisors at the Town concerning Dale Brown's comments [Exhibit 2. Request for Admission 18]; or, personally speak to the mayor or any council members at the Town concerning Dale Brown's comments [Exhibit 2. Request for Admission 18].

During Mr. Mestas' period of employment with the Town, there was no change in his job duties, pay, benefits; there was no change in the nature or amount of the work tasks assigned. [Exhibit 2. Request for Admissions: 8, 9, 10, 11, 12].

42 U.S.C. 2000e-2 (a)(1) provides, in pertinent part, that it shall be an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

The requirements to establish a Title VII hostile work environment claim, were established long ago in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-66 (1986) are : (1) plaintiff is a member of a protected class; (2) the employee was subjected to unwelcome harassment; (3) that harassment was based upon membership in protected class; (4) the harassment was sufficiently severe or pervasive so as to alter conditions of the employee's employment and create a hostile or abusive work environment; (5) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim did in fact

6

perceive it to be so, and (6) some basis for employer liability has been established.

Whether an individual was subjected to a hostile work environment depends on the totality of the circumstances.  In examining whether an environment is sufficiently hostile or abusive for purposes of Title VII, courts consider the totality of the circumstances, including such factors as (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct was physically threatening/humiliating or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work; (5) what physiological harm, if any, resulted.  *Chavez v. New Mexico,* 397 F.3d 826,832-33 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech. Services, Inc.,* 185 F.3d 1093, 1098 (10th Cir. 1999).

The law is clearly established in the Tenth Circuit that a plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs.  Instead, there must be a steady barrage of opprobrious comments. *Morris v. City of Colorado Springs,* 666 F.3d 654, 666 (10th Cir. 2012).  The plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule and insult in order for it to reach the level that it meets the legal requirement that the conduct complained of is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.  The work environment must be subjectively *and* objectively hostile or abusive. *Lounds, supra,* at 1222.

Looking at the totality of the circumstances in this case, Mr. Mestas' claim of hostile work environment based on national origin fails, as a matter of law. Mr. Brown's  conduct as described by Mr. Mestas, while not appropriate, was not  pervasive,  and it was not so egregious that it altered the working conditions of Mr. Mestas' employment and created a hostile working environment. According to Mr. Mestas, Mr. Brown made comments concerning Hispanics that he found

7

objectionable on three to six occasions during Mr. Mestas' period of employment with the Town. Mr. Mestas stated that the comments were made in general. [Exhibit 3. Interrogatory No. 11]. There is no evidence that the conduct was in any way physically threatening or humiliating. Mr. Mestas testified while he had sought counseling, that counseling was not related to his termination from employment with the Town of Evansville. [Exhibit 1. Plaintiff's deposition, pp. 142-43].

In conclusion, as stated in *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005), Title VII does not establish "a general civility code." The run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim. See, e.g., *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) wherein the Court, in discussing the Supreme Court's hostile work environment decisions, and stated that "[a] recurring point in these opinions is that simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."

It is respectfully requested that the Court grant summary judgment in favor of the Town on Mr. Mestas' claim of discrimination based upon national origin based harassment. Taking Plaintiff's responses to the requests for admission, interrogatories and deposition testimony as true, there are no genuine issues of material fact, and as a matter of law, the conduct described, while inappropriate, is not legally sufficient to establish a hostile work environment based upon national origin. These were isolated incidents of sporadic slurs, not the required steady barrage of opprobrious comments. The isolated incidents were not such as to permeate the workplace with discriminatory intimidation, ridicule and insult so as to be sufficiently severe or pervasive, as a matter of law, so as to alter the conditions of the plaintiff's employment.

**Retaliation.**   To prevail on a Title VII claim of retaliation, the plaintiff must establish that his having complained to Dale Brown on April 1, 2013, about his comments about Hispanics played some part in the employment decision to terminate him on April 17, 2017. *Hansen v. Skywest Airlines,* 844 F.3d 914, 925 (10th Cir. 2016).   There is no evidence of any type that demonstrates that Mr. Mestas' complaints to Mr. Brown played any part in his discharge or became a source of motivation for that discharge.  As such, the Court should grant summary judgment in favor of the Town on this retaliation claim as there are no genuine issues of material fact, and as a matter of law the Town is entitled to judgment in its favor.

**5.   The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of  hostile work environment based on disability as there are no genuine issues as to any material fact and  the moving party is entitled to a judgment as a matter of law.**

Mr. Mestas asserts he was subjected to harassment and intimidation based on disability that affected a term, condition or privileged of employment and was so pervasive and egregious that it altered the working conditions of his employment and created a hostile working environment.

42 U.S.C. 12112 (a) and (b)(5),  provide in pertinent part as follows:

> **(a) General rule**
>    No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
> * * *
> **(b) Construction.**
>    As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes—
> * * *
>    (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered

entity; or
> **(B)** denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

However, in order for Mr. Mestas to establish a claim for hostile work environment based on a disability in violation of 42 U.S.C. 12112 (a) and (b)(5), Mr. Mestas must first establish that he was a "qualified individual with a disability" during the time period he asserts he was subjected to a hostile work environment based upon disability. The definition of disability is set forth in 42 U.S.C. S 12102, which provides in pertinent part:

**(1) Disability**
The term "disability" means, with respect to an individual–
> **(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;
> **(B)** a record of such an impairment; or
> **(C)** being regarded as having such an impairment (as described in paragraph (3)),

**(2) Major life activities**
**(A) In general**
> For purposes of paragraph (1), major life activities include, but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
> * * *

**(3) Regarded as having such an impairment**
For purposes of paragraph (1)(C):
> **(A)** An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> **(B)** Paragraph (1)(C): shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

To avail himself of a cause of action based upon the ADA, it is necessary that Mr. Mestas

establish that he is a "qualified individual with a disability" at the point in  time that Mr. Mestas

asserts a violation of ADA has occurred.  That can be accomplished by an affirmative showing that

he has an actual disability under 42 U.S.C. 12102(1)(A)  *i.e.*, a  physical impairment that

substantially limits a major life activity, or,  has  a record of such physical impairment which

substantially limits a major life activity [42 U.S.C. 12102(1)(B)],  or,  is regarded as having such an

impairment [42 U.S.C. 12102(1)(C), subject to the limitations of (3)(B)] .

   **A. There is no evidence that Mr. Mestas was a "qualified individual with a disability"**
**so as to be able to pursue a claim under the ADA.**

   As noted above in Section 2 of this brief,   Mr. Mestas was off work due to his work injury

for approximately 6-7 weeks. [Exhibit 2.  Request for Admission 5]. Dr. Yakel released Mr. Mestas

to return to work to his regular duties with the Town of Evansville with no restrictions. [Exhibit 2.

Request for Admission 3].   The medical release contains no information concerning a physical

impairment, no information concerning whether Mr. Mestas had a physical impairment which

substantially limited a major life activity as compared to most people in the general population. 29

C.F.R. 1630.2(j) [Exhibit 1. Plaintiff's deposition; Depo.Exh. 3, Evans0139]. Between January 14,

2013, and April 17, 2013, Mr. Mestas did not present his employer  with any doctor's statement or

order which stated he had any restrictions  regarding the performance of his regular job duties with

the Town of Evansville. [Exhibit 2. Request for Admission 4].

   One of the rules of construction found in 29 C.F.R. 1630.2(j)(1)(i) which is used when

determining if an individual is substantially limited in performing a major life activity is that "not

every impairment will constitute a disability." See *McDonald v. City of New York*, 786 F.Supp. 2d

588 (E.D.N.Y. 2011) (City department of transportation employee's impairment, namely herniated

disc in cervical-lumbar area, did not substantially limit his major life activities of walking, sitting, standing, lifting, bending, or working, therefore, not actually "disabled" within the meaning of the ADA); *Brewer v. Sears, Roebuck & Co.*, 315 F.Supp.2d 295 (W.D.N.Y. 2004) service technician was not "disabled" for purposes of ADA as result of herniated disk in his back where his back had healed and his doctor cleared him to return to work without any restrictions.

Mr. Mestas made a claim for Social Security Disability benefits, asserting that he was totally disabled from working, commencing on April 16, 2013. The Social Security Administration found that his total disability began on April 16, 2013. All this leads to the logical conclusion that prior to the date of April 16, 2013, that Mr. Mestas did not have a physical impairment which substantially limited his ability to work, and, hence, he was not a "qualified individual with a disability" of the physical impairment type as provided in 42 U.S.C.12102 (1)(A).

An individual may establish that they are a qualified individual with a disability by establishing that they have a "record of impairment." To establish a "record of impairment" type disability in this matter, Mr. Mestas would have to establish by competent medical evidence that he had previously possessed a physical impairment that substantially limited a major life activity. As noted above, Mr. Mestas was only off work for 6-7 weeks, and he was released to return to his regular job duties, with no restrictions, and during the period of his employment, no restrictions were placed upon him or his activities at work. The medical release to return to work did not contain any information which demonstrated that Mr. Mestas had a physical impairment that substantially limited a major life activity as compared to most people in the general population. In the absence of that type of finding, Mr. Mestas will not have a "record of disability" under the provisions of 42 U.S.C. 12102(1)(B) and will not be a qualified individual with a disability who can maintain an action under

12

the ADA.

As stated in the 29 C.F.R. 1630.2 (j) (1)(i), not every impairment is a disability. The fact that a person has once possessed a physical impairment will not necessarily result in a determination that a "record of impairment" type of disability exists. In *Sampson v. Mathacton School District,* 88 F.Supp. 3d 422 (E.D.Pa. 2015) a school administrator was trying to establish a prima facie case of disability discrimination based on a knee injury. She failed to establish that she had a "record of impairment" as her injury was limited in duration and impact. While she experienced pain and swelling for approximately six months, then missed four or five months of work due to surgery and recuperation, and the collateral effects of her injury included the occasional use of knee brace, difficulty standing, walking and sitting for long periods of time without feeling discomfort, her impairment did not rise to the level of being substantially limiting of major life activities, hence, her impairment was not a disability. In *Marsh v. Terra International (Oklahoma), Inc.*, 122 F.Supp. 3d 1267 (N.D. Okla. 2015), the employee could not show that he qualified as disabled because he had a record of disability; the employee had suffered back and knee injuries, but those did not cause him any significant problems or cause him to be placed on any restrictions.

A individual can also establish that they are a qualified individual with a disability if they can demonstrate that they are "regarded as being disabled" as provided in 42 U.S.C. 12102(1)(C). That occurs when the impairment, whether real or imagined, is regarded as substantially limiting a major life activity because a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or, a covered entity mistakenly believes that a non-limiting impairment substantially limits one or more major life activities. Excluded from "regarded as being disabled" are conditions that are both transitory and

13

minor–meaning the impairment is expected or actually lasted less than 6 months.

Mr. Mestas was injured, but he returned to work to his regular duties within 6-7 weeks, with no restrictions. As such, Mr. Mestas' injury was both transitory and minor. When Mr. Mestas returned to work at the Town on January 14, 2013, he returned to the same position and duties as he had held on November 26, 2012. [Exhibit 2. Request for Admission 6]; there were no changes in his job duties, his pay, benefits received, the nature of work tasks assigned, or a reduction in the nature of the work tasks assigned from those which existed on November 26, 2012 [Exhibit 2. Request for Admissions 8, 9, 10,11, 12]. After his return to work, Mr. Mestas did not present his employer with any doctor's statement or order which stated he had any restrictions regarding the performance of his regular job duties with the Town of Evansville. [Exhibit 2. Request for Admission 4].

Based on these undisputed facts, Mr. Mestas was not a qualified individual with a disability of the " regarded as" disability type as provided by 42 U.S.C. 12102(1)(C). This is in line with the result reached in *Bush v. Donahoe*, 964 F.Supp.2d 401 (W.D. Pa. 2013) where the employee's impairment, which was an ankle/foot sprain which required her to wear an open -toed cast/boot, was transitory and minor thus precluding a finding that she was regarded as disabled under the ADAAA. The impairment lasted less than six months, the employee could perform all duties of her job, and there was no evidence that she had been removed from full duty. See also, *Fuoco v. Lehigh University*, 981 F.Supp. 2d 352 (E.D.Pa. 2013), where the employee's bare, unsupported assertion that she was "viewed as disabled" was insufficient to support her claim of disability discrimination in violation of the ADA, based on her termination. She had  failed to explain which disability she was regarded as having, and by whom, and  offered no evidence that her employer perceived her as

having a disability at or around the time it terminated her employment.

In summary, Mr. Mestas has presented no evidence which establishes that the November 26, 2012, injury resulted in a physical impairment that substantially limited a major life activity as compared to most people in the general population as required by the regulations to establish a disability under 42 U.S.C. 12102(1)(A). Only if that type of evidence exists with regard to the November 26, 2012, injury can Mr. Mestas establish a "record of impairment" disability so that Mr. Mestas can be a qualified individual with a disability for the time period of January 14, 2013, to April 16, 2013–which is the time period during which he alleges that he was subjected to a hostile work environment based on disability under the ADA. In the absence of that showing, Mr. Mestas is not a qualified individual with a disability [of the record of disability type] and cannot avail himself of an action under the ADA. In the absence of that showing, then the Court should find that no genuine issue of material fact exists and that summary judgment should be entered in favor of the Town.

**B. The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of hostile work environment based on disability.**

Mr. Mestas asserts he was subjected to a hostile work environment based upon disability. As discussed above, the evidence in the record does not establish Mr. Mestas was a qualified individual with a disability so as to allow him to pursue such a claim under the ADA for hostile work environment based upon disability. However, even if such action were pursued, Mr. Mestas' claim would fail, as a matter of law, because the conduct complained of was not sufficiently severe or pervasive to alter a term, condition or privilege of employment.

Title VII precedent for hostile work environment is applied to ADA hostile work

environment cases. As such, a claimant must prove, to establish a hostile work environment claim based on disability: that he is a qualified individual with a disability; he was subjected to unwelcome harassment; the harassment was based on his disability; the harassment was sufficiently severe or pervasive to alter a term, condition or privilege of employment; and some factual basis exists to impute liability for the harassment to the employer.

Whether an individual was subjected to a hostile work environment based on disability depends on the totality of the circumstances. In examining whether an environment is sufficiently hostile or abusive for purposes of ADA hostile work environment, courts consider such factors as (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct was physically threatening/humiliating or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work; (5) what physiological harm, if any, resulted. *Chavez, supra.*

The law is clearly established in the Tenth Circuit that a plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs, comments or conduct. Instead, there must be a steady barrage of opprobrious comments or incidents. *Morris, supra.* The plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule and insult in order for it to reach the level that it meets the legal requirement that the conduct complained of is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. The work environment must be subjectively *and* objectively hostile or abusive. *Lounds, supra,* at 1222.

Looking at the totality of the circumstances in this case, Mr. Mestas' claim of hostile work environment based on disability fails, as a matter of law. Mr. Brown's conduct as described by the

16

Plaintiff of being harsh and condescending and not letting him use his personal snow blower, or

having him do his job without assistance [Exhibit 1. Plaintiff's deposition pp. 119, 121-22] was not

so pervasive and not so egregious that it altered the working conditions of Mr. Mestas' employment

and created a hostile working environment.  There is no evidence that the conduct was in any way

physically threatening or humiliating.  Mr. Mestas testified he had sought counseling, but the

counseling was not related to his termination from employment with the Town of Evansville.

[Exhibit 1.  Plaintiff's deposition, pp. 142-43].

       Looking at the totality of the circumstances, Mr. Mestas' claim of hostile work environment

based on disability fails, as a matter of law.  Mr. Brown's conduct as described by the Plaintiff, was

not  pervasive and it was not so egregious that it altered the working conditions of Mr. Mestas'

employment and created a hostile working environment; the Court should grant summary judgment

in favor of the Town on this claim.

**6.**   **The Town of Evansville is entitled to the entry of summary judgment in its favor on Plaintiff Mestas' claim of retaliation in employment for taking protected medical leave for a disability in violation of the ADA  as there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.**

       42 U.S.C. 12203 (b)  provides in pertinent part as follows:

**S 12203.  Prohibition against retaliation and coercion**
                   * * *
**(b) Interference, coercion, or intimidation**
   It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised, or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

       Mr. Mestas asserts that he  was retaliated against in his employment for taking protected

medical leave for a disability in violation of 42 U.S.C. 12203 (b).  However, the evidence clearly

establishes that Mr. Mestas, upon return from taking medical leave, returned to the same job and job duties and received the same pay and same benefits as he had received prior to the medical leave. [Exhibit 2. Request for Admissions 8, 9, 10]. There was no reduction in the amount of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 11]; there was no reduction in the nature of work tasks that he was assigned from that which he performed on November 26, 2012 [Exhibit 2. Request for Admission 12]. The Town of Evansville expected Mr. Mestas to perform all the duties required of his position when he returned to work on January 14, 2013, through the date of his termination. [Exhibit 2. Request for Admission 7].

If Mr. Mestas is claiming that his termination on April 17, 2013, was in retaliation for having taken a medical leave five and a half months earlier, the burden is on Mr. Mestas to come forward with evidence which establishes that termination was "on account of" or motivated by his having taken medical leave. There must be some showing of a causal connection between that leave and the subsequent termination. There has been no evidence, direct or indirect, which supports that claim.

In addition, Mr. Mestas' claim of retaliation under the ADA fails because on April 17, 2013, the date of his termination, he was not a "qualified individual with a disability" able to perform the essential functions of the position. Mr. Mestas' claim for Social Security Disability benefits stated that he was totally disabled from performing various activities as of April 16, 2013, [Exhibit 3. Interrogatory No. 16], and that the disability for which he was applying for Social Security Disability benefits was present at the time he was terminated from the Town of Evansville on April 17, 2013.[Exhibit 3. Interrogatory No. 17]. The Court looks only to whether Mr. Mestas was

qualified at the time of his termination. *Moss v. Harris County Constable Precinct One,* 851 F.3d 413,418 (5ᵗʰ Cir. 2017). In this situation, Mr. Mestas was not able to perform the essential functions of the position, according to his own statements made under oath. Consequently, Mr. Mestas has failed to establish a prima facie case of retaliation under the ADA, and his claim fails as a matter of law, and summary judgment should be entered in favor of the Town of Evansville on this claim.

When a plaintiff seeking to assert a claim under the ADA has made an application for disability benefits, and asserts that he is unable to work, he must produce an explanation of this apparent inconsistency that is "sufficient" to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 807 (1999). Mr. Mestas has offered no explanation for the inconsistency between his sworn testimony in applying for SSDI , and his claim to the EEOC, and now to this Court that he is a qualified individual with a disability who can perform the essential functions of the job. In fact, here, as in *Cleveland, supra,* the only evidence he uses to support his contention is that the statutes have different standards for determining disability. [Exhibit 1. Plaintiff's deposition, pp. 152-153] In *Moxley v. New Jersey State Police,* 196 F.3d 160, 166 (1999), the court noted that simply averring that the statutory schemes differ is not enough to survive summary judgment in light of *Cleveland.* In addition, the *Cleveland* court held that a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or own previous sworn statement." *Id.* at 806.

For the reasons stated above, there are no genuine issues of material fact, and the Town of Evansville is entitled to the entry of summary judgment in its favor on the Plaintiff's claim of retaliation for having taken protected medical leave under the ADA.

**7. Conclusion.**

There are no genuine issues of material fact which would preclude this Court, as a matter of law, from granting summary judgment to the Town of Evansville on all of Mr. Mestas' claims.

**WHEREFORE,** Defendant Town of Evansville prays the Court will enter an order granting Defendant's motion for summary judgment, and for such other and further relief as the Court deems just and proper.

**DATED** this 20th day of October, 2017.

/s/ Thomas A. Thompson
Thomas A. Thompson, #6-2640
Kylie M. Rangitsch, #7-5547
Natasha K. Martinez, #7-5119
Attorneys for Defendants
MacPherson, Kelly & Thompson, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of October, 2017, I electronically filed the foregoing instrument with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the registered CM/ECF user at the following address:

Megan L. Hayes
Attorney at Law
910 Kearney St.
Laramie, WY  82070
Email: mlhayes@wyoming.com

/s/   Thomas A. Thompson
For MacPherson, Kelly, & Thompson, LLC

Electronically Filed By: js