

**FILED**

8:07 am, 11/21/17
**Stephan Harris**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

ROY MESTAS,

                Plaintiff,

vs.                             Case No:  17-CV-17-NDF

TOWN OF EVANSVILLE,

                Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. The Court has reviewed the motions, responses and heard oral argument. The Court FINDS and ORDERS as follows:

## Background

Plaintiff Roy Mestas (Mestas) was employed by the public works department for Defendant Town of Evansville (Evansville) on September 12, 2012. Mestas's primary responsibility was as the sanitation truck driver, but he also had other public works responsibilities. On November 26, 2012, Mestas injured his back when he fell on the ice at work. Mestas was on medical leave from November 26, 2012 until January 14, 2013, when he returned to work with no restrictions.

Mestas claims that when he returned to work, his supervisor, Dale Brown (Brown), engaged in a pattern of harassment, including extending his probationary

period, not allowing other public works employees to assist him, belittling him and harassing him.  On one occasion Mestas requested to use his personal snowblower for snow removal and Brown denied the request.

Brown terminated Mestas's employment on April 17, 2013.  Mestas then applied for, and received, Social Security Disability Insurance Benefits (SSDI) as of April 16, 2013.

## STANDARD OF REVIEW

Summary judgment is appropriate where the movant has demonstrated that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1207-08 (10th Cir. 2010). As a general matter, the summary judgment movant has the burden to produce evidence supporting its claims. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the movant does so, the burden of production shifts to the party opposing summary judgment to demonstrate a genuine issue of material fact exists. *Id*. At all times the Court must view the evidence in the light most favorable to the party opposing summary judgment. *Id.* at 1168. There is a genuine issue of material fact if a reasonable jury could find in favor of the non-moving party. *Id*. at 1169. In addition, the Court may only consider evidence that is admissible at trial, inadmissible evidence should be disregarded. *Johnson*, 594 F.3d at 1209.  "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Const. Co.*, 52 F.3d 1531, 1541 (10th Cir. 1995)(citations omitted).

**DISCUSSION**

Mestas has three claims in his Amended Complaint against Evansville. (Doc. 32). Specifically, those claims are 1) discrimination based on national origin in violation of Title VII, 2) hostile work environment based on the Americans with Disabilities Act (ADA), and 3) retaliation in employment for taking medical leave for a disability in violation of the ADA.

Mestas filed a motion for partial summary judgment and Evansville filed a motion for summary judgment.  In his motion, Mestas asks the Court to find as a matter of law that (1) Mestas had an actual disability that was reasonably accommodated with medical leave, that Mestas's leave constituted protected conduct for purposes of his ADA retaliation claim; and (2) for purposes of his ADA hostile work environment claims, when he returned to work from his medical leave Mestas was disabled because he had a "record of" a disability based on his prior medical leave and his inability to work. (Doc. 52 [Pl's Motion for Partial Summary Judgment] at 2).  Evansville seeks summary judgment on all claims.  Evansville asserts that Mestas failed to establish any dispute of material fact to support his claims.  The Court will consider both these motion within the same discussion.

**1.  National Origin Discrimination under Title VII**

Mestas claims he was subjected to national origin harassment based on his Hispanic ethnicity.  He claims these actions affected a term, condition or privilege of employment that was so egregious it altered the working conditions of his employment

and created a hostile work environment and that he was terminated after he complained to his supervisor, Brown.

In his charge before the EEOC Mestas claimed two instances when Brown used "dumb Mexican" or "stupid beaner" on February 22, 2013 and March 27, 2013.  (Doc. 53-1 at 12-13 [Mestas depo. at 125-16]).   He also testified that Brown used derogatory comments about other minorities groups on multiple occasions, and Mestas heard Brown make derogatory comments about Mexicans on at least six occasions.   Mestas also recounted one time when Brown told Mestas and another Hispanic employee, Eric Reyna that he didn't need "you beaners going together".  (*Id*. at 13 [Mestas depo. at 127]). Brown later apologized to Reyna, but not to Mestas.   *Id*.   Mestas did not talk to any Evansville officials about Brown's comments.  (*Id*. [Mestas depo. at 128]).  Mestas also believes there was one other time between February and April that Brown made a "beaner" or "Mexican" comment.  (*Id*. [Mestas depo. at 129]).  He also stated that he heard Brown make derogatory comments about Hispanics on at least six occasions, if not more.  (Doc. 53-3 at 5).

Under Title VII, it is "'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)).  "This includes an employee's claims of a hostile work environment based on race or national origin discrimination." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

The Tenth Circuit has explained that "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir.2012) (internal quotes and citations omitted). "To survive summary judgment on a claim alleging a racially hostile work environment, [the plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim "was targeted for harassment because of his race or national origin." *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 957 (10th Cir. 2012) (*citing Morris,* 666 F.3d at 664). "'The applicable test for a hostile work environment has both objective and subjective components. A dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended' and both must be proved." *Hernandez*, 684 F.3d at 957 (citing *Morris*, 666 F.3d at 664).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

Mestas also claims he was terminated after making a complaint about these statements to Brown.  To establish a prima facie case of retaliation, Mestas must show he

engaged in protected opposition to discrimination, Brown took an adverse employment action against him, and a causal connection between the protected activity and adverse action exists. See *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008) (citing *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004)); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

### A. Hostile Work Environment

There was another Hispanic employee who worked at the public works department during the time in question, named Eric Reyna.  Reyna testified that during 2012 to 2013 he heard comments about Mexicans maybe two or three times that he recalled.  (Doc. 59-7 at 11 [Reyna depo. at 36-37]).  He also testified that Brown apologized to him at one point for making a comment about Mexicans.  (*Id*.).  Reyna testified that he was involved in telling jokes about Mexicans in the workplace.  (*Id*. at 12 [Reyna Depo. at 41]).  Reyna also testified that he did not remember Brown telling any inappropriate jokes about minorities.  (*Id*. [Reyna Depo. at 41-42]).  Reyna did not remember Brown using the term "stupid beaner", only that he used the term "beaner" improperly three or four times during the four years he worked with Brown and once or twice in front of Mestas.  (*Id*. at 22-24 [Reyna depo. at 81-83, 86-87]).

Public works employee Ronald Emond testified that guys would joke around and he did not know if these jokes were made in Brown's presence.  He also testified that he did not remember if Brown participated in these jokes.  (Doc. 59-27 at 28 [Emond depo.]).

Even accepting all of Mestas's claims as true, they represent offhand comments and isolated incidents. Mestas never informed anyone in city hall or any other city official of his complaints. Additionally, when Reyna indicated he was upset about Brown's comments, Brown apologized to Reyna and it does not appear that Reyna experienced any adverse employment action because of his complaints. Additionally, while Mestas was recording some of his conversations with Brown, he has failed to include any recorded conversation where Brown makes a racial remark.

While Brown may have been a bad boss, who was belittling and harsh to Mestas, Mestas has failed to establish that Brown created a hostile work environment based on prohibited racial grounds. For these reasons, Mestas's Title VII hostile work environment claim is DISMISSED.

### B.  Title VII Retaliation

Mestas also claims retaliation in the form of termination based on his complaint to Brown about using the term "beaner". However, Mestas did not include this claim in his Amended Complaint. (Doc. 32). Mestas's Count 1 asserts a cause of action for discrimination based on national origin. The Amended Complaint does not indicate that Mestas engaged in protected activity or that he suffered an adverse employment action as a result of the protected activity. (Doc. 32 at 7-8).

However, both parties discussed this claim, so the Court will consider it briefly. Mestas appears to claim he was terminated in retaliation for complaining about the comments. To establish a prima facie case of retaliation, Mestas must show he engaged in protected opposition to discrimination, Brown took an adverse employment action

against him, and a causal connection between the protected activity and adverse action exists. *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008) (citing *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)).  "[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted).

Even if Brown terminated Mestas in retaliation for his protected activity of complaining about Brown's improper racial statements, Mestas has failed to show how he was damaged by the retaliation. "Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim, see Restatement of Torts § 9 (1934) (definition of "legal cause"); § 431, Comment a (same); § 279, and Comment c (intentional infliction of physical harm); § 280 (other intentional torts); § 281(c) (negligence)." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.

Ct. 2517, 2524–25 (2013). "This includes federal statutory claims of workplace discrimination." *Id*. (citations omitted). "In the usual course, this standard requires the plaintiff to show 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Id*. (citations omitted).

In this case, Mestas has alleged that starting April 16, 2013, he was no longer able to perform the essential functions of his job, specifically, that he was not able to engage in snow removal. Additionally, Mestas applied for and received total disability SSID benefits effective April 16, 2013. Based on these undisputed facts, Mestas cannot show any damages from his termination, because his total disability prevented him from working.

The Court finds that Mestas failed to establish facts that would support his claim for retaliation based on his complaints regarding Mestas's national origin. To the extent this claim existed in Mestas's Amended Complaint, it is DISMISSED.

## 2. Mestas's ADA Claims

In addition to his claims regarding Title VII, Mestas also claims Brown created a hostile work environment in violation of the ADA and that Brown retaliated against Mestas for taking medical leave for a disability in violation of the ADA.

As part of this claim Mestas asks the Court to find as a matter of law that (1) Mestas had an actual disability that was reasonably accommodated with medical leave, which constituted protected conduct for purposes of his ADA retaliation claim; and (2) for purposes of his ADA hostile work environment claim, when he returned to work from his medical leave Mestas was disabled because he had a "record of" a disability based on

his prior medical leave and his inability to work. (Doc. 52 [Pl's Motion for Partial Summary Judgment] at 2).

This case presents unique and unusual facts. It appears that Mestas was working without any limitation or restriction, when he fell at work on November 24, 2012. At that time, he immediately took medical leave. Then on January 14, 2013, Mestas returned to work with no restrictions. From January 14, 2013 to April 16, 2013, Mestas never provided any note from his doctor providing additional restrictions, nor does it appear he asked for accommodation. It appears that on April 11, 2013, Mestas told Brown he was getting an injection in his back. During this recorded conversation, Mestas did not indicate the need for reasonable accommodations. Additionally, during this time period Mestas did not provide any information from his doctor that he had any restriction. After his termination, Mestas applied for SSID benefits for total disability, effective April 16, 2013. That request was granted and Social Security found Mestas was totally disabled and not able to work effective April 16, 2013.

The ADA was created "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). A person with a disability is defined as an individual who has "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Thus, the ADA is violated when a covered entity discriminates "against a qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

> The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Initially, we need to distinguish between the elements of an ADA retaliation claim and an ADA discrimination claim. To prosecute an ADA discrimination claim, a plaintiff must show that he is a "qualified individual with a disability." See *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (quoting 42 U.S.C. § 12112(a)).  But to prosecute an ADA retaliation claim, "a plaintiff need not show that [ ]he suffers from an actual disability." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001). Rather, on this point, the plaintiff need only show that he had a reasonable, good-faith belief that he was disabled. *Id.*; see *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA . . . ." (quoting 42 U.S.C. § 12203(a))).

*Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016).

## A. ADA Hostile Work Environment Claim

Mestas claims Brown created a hostile work environment by belittling Mestas, failing to provide him with assistance, and extending his probation period because of the extended absence from work.  The standard for determining a hostile work environment under the ADA is the same as a hostile work environment under Title VII.

"[A]s a threshold matter, any plaintiff asserting a claim under the ADA must establish he or she is a 'qualified individual with a disability.'" *Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (citing 42 U.S.C. § 12112(a)). "Disability" is defined by the ADA as "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Mestas argues that when he returned to work in January 2013, he was a "qualified individual with a disability" because he had "a record of" disability based on his prior medical leave and his inability to work. Additionally, as part of his motion for partial summary judgment, Mestas asks the Court to find as a matter of law that Mestas had a "record of" disability based on his prior medical leave for purposes of his hostile work environment claim.

"In determining whether an impairment is substantially limiting such that it may support a record of disability under the ADA, the following factors are considered: '(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact" of the impairment.'" *McKenzie v. Dovala*, 242 F.3d 967, 972–73 (10th Cir. 2001)(quoting 29 C.F.R. § 1630.2(j)(2)). In considering these factors, the Court finds Mestas failed to establish he had "a record of" disability under the ADA.

Again, the Court would note that Mestas provided his medical records, but has not designated any expert testimony to explain his physical condition during the November 2012 to January 2013 timeframe. However, a review of the records demonstrates that Mestas did not undergo surgery or hospitalization related to his injury. Rather, he was treated with steroid injections, therapy, and pain management. (Doc. 52-7). Mestas was out for a relatively short period of time, approximately six weeks from November 24,

2012 to January 14, 2013.[1]  Additionally, when Mestas returned to work on January 14, 2013, he returned to work with no restrictions, indicating no permanent or long term impacts from the prior injury.  In fact, Mestas's progress notes from January 9, 2013, represent that he was released back to work without restrictions, that he was feeling well, and that his progress was rated as excellent.  Doc. 52-7 at 3.

During the time from January 14, 2013 and April 17, 2013, Mestas did not provide Brown with any doctor's statement or order placing restrictions on the performance of his job duties.  There is no evidence that Mestas suffered from a disability during the time period of January 14, 2013 to April 17, 2013.  During this time, Mestas did not provide information to Brown that he was no longer able to perform the essential duties of his job, without reasonable accommodation.  Mestas testified that he informed Brown that he was getting a cortisone shot in his back, but this was not a request for a reasonable accommodation based on disability.  Again, Mestas did not provide a note from his doctor or any other information to Brown that his back was injured to the degree that Mestas was a qualified individual with a disability or that he required a reasonable accommodation to perform his essential job functions.

Mestas failed to establish that he was a "qualified individual with a disability" because he had a "record of a disability" as required to receive protection under the ADA. For all of these reasons, Mestas has failed to prove his hostile work environment claim under the ADA.

---

[1] In completing his continuing disability claim form on December 11, 2012, Mestas indicated that he did not think he would be released to work until March 1, 2013. (Doc. 52-7 at 61).  This appears to match initial estimate provided by his physician on the initial accident and health claim form submitted to Worker's Compensation.  (Doc. 52-7 at 70-71).

**B.  ADA Retaliation**

Mestas also claims Brown engaged in ADA retaliation for Mestas taking ADA protected medical leave.  Mestas claims after he took protected medical leave, Brown belittled Mestas, failed to provide him with assistance, and extended his probationary period because of the extended absence from work and ultimately terminated his employment.

"To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." *Id.* at 1186–87 (citations, quotation marks and brackets omitted).

In this case, Mestas claims he engaged in protected activity under the ADA by taking medical leave after he fell and injured his back from November 24, 2012 to January 16, 2013.  The Tenth Circuit has recognized that requests for limited leave for medical treatment may qualify as a reasonable accommodation under the ADA.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002).  However, there is nothing in this case to suggest that Mestas's medical leave in this case was a protected activity under the ADA.

There is no evidence Mestas requested an accommodation of time off under the ADA to recover from his fall.  There is no evidence that Mestas took any steps to classify his medical leave from November to January as a reasonable accommodation.  At oral argument, Mestas's counsel argued that Mestas did not have to specifically invoke the

14

provisions of the ADA to be entitled to the protections of the ADA. However, Mestas has claimed retaliation under the ADA. Mestas has the burden of establishing that he engaged in a protected activity under the ADA. In explaining the distinction between leave under the Family Medical Leave Act (FMLA) and leave under the ADA, the regulations explain:

> ADA's "disability" and FMLA's "serious health condition" are different concepts, and must be analyzed separately. FMLA entitles eligible employees to 12 weeks of leave in any 12–month period due to their own serious health condition, whereas the ADA allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation. FMLA requires employers to maintain employees' group health plan coverage during FMLA leave on the same conditions as coverage would have been provided if the employee had been continuously employed during the leave period, whereas ADA does not require maintenance of health insurance unless other employees receive health insurance during leave under the same circumstances.

29 C.F.R. § 825.702. Mestas could not just "take" ADA leave as a reasonable accommodation without any notice or discussion with his employer. ADA leave as a reasonable accommodation is not mandatory or automatic, rather it is part of the accommodation discussion, which includes a determination of whether the leave poses a hardship to the employer. In this case, Mestas failed to present any evidence that his earlier leave was taken as part of an "accommodation" provided by Evansville for his back injury. There is no evidence in the record to support Mestas's claim that his medical leave from November to January was a protected activity under the ADA. For these reasons, Mestas cannot establish that he engaged in a protected activity under the ADA. As a result Mestas cannot establish a prima facie claim for retaliation under the ADA.

Finally, on the date of his termination, Mestas was not a qualified individual, because he was not able to perform the essential functions of his position.  Mestas sought and received SSDI benefits, based on his claim that he was disabled, effective April 16, 2013.  Therefore, any ADA claim related to his termination fails, because on the date of his termination, Mestas was no longer able to perform the essential functions of his position.

For all of these reasons, Mestas has failed to establish that he engaged in protected conduct under the ADA to support his claim for retaliation in violation of the ADA.

## CONCLUSION

For all the above stated reasons, the Court finds that Mestas has failed to establish a claim for hostile work environment and retaliation under Title VII.  Additionally, Mestas has failed to establish he was a qualified individual with a disability under the ADA.   For all of these reasons, the Court finds Mestas's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 53) is GRANTED.

IT IS FURTHER ORDERED that Mestas's Motion for Partial Summary Judgment (Doc. 51) is DENIED.

IF IS FINALLY ORDERED that Mestas's claims are DISMISSED WITH PREJUDICE and that Judgment shall be entered in Defendant's favor.

Dated this __21st__ day of November, 2017.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE